IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JABBAROV OYBEK JAMOLIVICH (ISN 452), ) | *Approved for public filing by CSO* |
|     *Petitioner*, ) | |
| v. ) | |
| ) | Civil Action No. 05-2112 (RBW) |
| GEORGE W. BUSH, et al., ) | |
|     *Respondents*. ) | |

**PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION FOR APPOINTMENT OF A "FILTER TEAM" TO EXAMINE PRIVILEGED COMMUNICATIONS**

Petitioner, Jabbarov Oybek Jamolivich, by and through his undersigned counsel, respectfully submits this memorandum of law in opposition to Respondents' motion for appointment of a Department of Defense "filter team" to examine privileged communications seized without notice or approval, filed July 7, 2006. Respondents' motion should be denied.

**Introduction**

On October 28, 2005, Petitioner filed the above captioned petition for writ of *habeas corpus* on a *pro se* basis. Although he requested the assistance of counsel in his petition, none was assigned. On December 21, 2005, the Center for Constitutional Rights ("CCR") filed a *habeas corpus* petition, Mohammon v. Bush, Civ. No. 05-2386 (RBW), on behalf of more than 150 detainees from numerous countries imprisoned at the U.S. Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), including Mr. Jamolivich. On April 27, 2006, undersigned counsel entered an Appearance on behalf of Mr. Jamolivich in the Mohammon case. As there was no protective order in place, undersigned counsel was not permitted to communicate with Mr. Jamolivich.

On June 10, 2006, three detainees died while in Respondents' exclusive care, custody and control, and while subject to the jurisdiction of the federal courts. Although they were detained virtually *incommunicado* for several years, none of these men had ever been charged with an offense or received a fair hearing at which he might challenge the legality of his indefinite detention. Immediately after the deaths of these men, the Naval Criminal Investigative Service ("NCIS") began a criminal investigation apparently to determine whether these detainees or other detainees may have engaged in a suicide "plot" intended as an act of "asymmetrical warfare" or a "good PR move."[1] NCIS unilaterally seized nearly all detainees' attorney-client materials and other materials on or about June 14, 2006. NCIS agents subsequently reviewed materials taken from at least eleven detainees, including three envelopes containing confidential legal materials, without any prior notice to counsel or the Court. These deliberate actions plainly violated the attorney-client privilege.

On June 20, 2006, while requesting an application for security clearance, undersigned counsel was informed by counsel for the Respondents that Mr. Jamolivich had an earlier filed petition for habeas corpus (05-cv-2112) pending before this Court. Prior to that time, neither undersigned counsel nor CCR was aware of this duplicative petition. Thereafter, undersigned counsel filed a Notice of Appearance in the above captioned case on June 26, 2005.

Although this Court entered the Amended Protective Order in Mohammon on June 26, 2006, the Order did not reach Mr. Jamolivich because of his earlier filed petition in this case. Undersigned counsel has filed a motion seeking entry of the protective order with respect to Mr. Jamolivich, which is currently pending before the Court. See Mohammon, dkt. no. 73.

---

[1] *See* Carol Rosenberg, *Commander: Suicide Plots Continuing*, Miami Herald, June 20, 2006 (Statement of Rear Adm. Harry Harris, Jr.); Catherine Phillip, *US Dismisses Suicides as "Good PR Stunt"*, Times (U.K.), June 12, 2006 (Statement of Senior State Department Official Colleen Graffy).

However, since there is no protective order in place with respect to either of Mr. Jamolivich's petitions, undersigned counsel has had no communication whatsoever with his client.

On July 7, 2006, Respondents filed a motion notifying the Court for the first time that they had seized 1,100 pounds of attorney-client materials and other materials from the detainees. Respondents also sought the creation of a Department of Defense "filter team" to review the seized materials and separate privileged and non-privileged documents. Respondents filed identical motions in every Guantánamo detainee case, except those few cases involving non-enemy combatant detainees, apparently without regard for whether materials were actually seized from the detainee-petitioners in each case.[2]

Petitioner now opposes Respondents' motion on two grounds. First, the Court should deny Respondents' motion because the appointment of a filter team is unnecessary. Whatever materials were seized by the NCIS from Mr. Jamolivich, they do not contain any privileged attorney-client communication between petitioner and undersigned counsel. Second, the Court should deny Respondents' motion on the merits for all of the reasons set forth by the petitioner in the *Al-Shimrani* detainee case.

## Argument

### I. RESPONDENTS' MOTION SHOULD BE DENIED BECAUSE THE APPOINTMENT OF A FILTER TEAM IS UNNECESSARY IN THIS CASE

Respondents' motion should be denied because Petitioner has not had privileged communication with his attorney prior to the deaths of the three detainees on June 10, 2006, and the seizure of detainee materials on or about June 14, 2006. Indeed, given the great lengths to which Respondents have gone to prevent detainees from having any meaningful access to the

---

[2] Respondents have since withdrawn their motion in certain cases where they have determined that no materials were seized from the petitioners. They have not done so here.

outside world, it is implausible that Respondents could have seized *any* legal materials from the Petitioner since the Amended Protective Order has not been entered in either of his cases.

Indeed, Respondents have refused to consent to the entry of the Amended Protective Order with respect to Mr. Jamolivich. Nor will Respondents permit Petitioner to communicate with undersigned counsel through the legal mail system or to meet with counsel until the Amended Protective Order is entered.

Accordingly, because Respondents have consistently attempted to – and largely succeeded in – staunching all attorney-client communications and frustrating counsel access to Mr. Jamolivich, it does not appear that Petitioner had privileged communications with any attorney prior to the detainee deaths and Respondents' seizure of detainee materials. Privileged communications are simply not possible unless and until the Court enters the Amended Protective Order with respect to Mr. Jamolivich. Nor have Respondents offered any basis to suggest that Petitioner has misused (or participated in the misuse by others of) the attorney-client privilege in any way that would merit the invasion and disruption of that privilege by the appointment of a filter team. Unless Respondents seek somehow to interfere with Petitioner's privileged communications <u>since</u> the detainee deaths and Respondents' seizure of detainee materials, the appointment of a filter team is wholly unnecessary and the Court should deny Respondents' motion on this basis.

## II. THE COURT SHOULD DENY RESPONDENTS' MOTION ON THE MERITS FOR ALL OF THE REASONS SET FORTH BY PETITIONER IN *AL-SHIMRANI*

Respondents' motion should be denied on the merits for all of the reasons set forth by the petitioner in <u>Al-Shimrani v. Bush</u>, No. 05 CV 2249 (RMC) (D.D.C.) (July 20, 2006) (dkt. no. 25). In particular, on July 28, 2006, the Court of Appeals rejected a plan, proposed by the government and approved by the District Court, to create a government filter team to review

potentially privileged materials seized by the government pursuant to a search warrant in a criminal investigation of Representative William J. Jefferson. See <u>United States v. Rayburn Office Bld'g, Room 2113, Washington, D.C. 20515</u>, No. 06-3105, slip. Op. at 1-2 (D.C. Cir. July 28, 2006). Respondents' filter team proposal here is virtually identical to the proposal recently rejected by the Court of Appeals. <u>See</u> <u>also</u> Notice of Supplemental Authority, <u>Abdah v. Bush</u>, No. 04 CV 1254 (HHK) (AK) (D.D.C.) (July 31, 2006) (dkt. no. 184). As set forth by the Petitioner in that case, the detainee materials improperly seized by Respondents should be transferred forthwith to the custody of the Court or a Special Master appointed by the Court.

### Conclusion

For all of the foregoing reasons, Respondents' motion should be denied.

                        Respectfully submitted,
                        Counsel for Petitioner,

                        /s/ Michael E. Mone, Jr.
                        Michael E. Mone, Jr.
                        (MA BBO No. 634607)
                        ESDAILE, BARRETT & ESDAILE
                        75 Federal Street
                        Boston, MA 02110
                        (617) 482-0333

Date: August 3, 2006